### JOE H. FARABEE v. STATE

No. 34,967.   November 21, 1962

*Lee Sutton*, Abilene, for appellant.

*Tom Todd*, District Attorney, Abilene, and *Leon Douglas*, State's Attorney, Austin, for the state.

McDONALD, Judge.

The offense is theft, by false pretext, of property over the value of fifty dollars, as denounced by Art. 1413, V.A.P.C.; the punishment, two years' confinement in the penitentiary.

Dr. Travis Smith, the injured party, testified that he and appellant were members of the same church; that appellant said he was working to get enough purchasers together to purchase an insurance company; that the persons appellant was representing were to buy the major part of the company; that the company was having some organizational difficulties; that appellant wanted Smith to buy stock and pay him four hundred dollars. A check was introduced in evidence. The witness further testified that appellant told him he would send four hundred dollars "into the escrow fund". An option contract was introduced which recited that Smith paid four hundred dollars; that he could elect to purchase or have the funds refunded at the end of a 90-day period; that he agreed to accept the full refund should the organization not be consummated. The contract was signed by appellant.

A letter was introduced in evidence from the appellant to Dr. Smith, saying that they planned to accept him as medical director of the company provided the terms of agreement in acquiring the stock were carried out. A letter from appellant to Dr. Smith, written after the doctor had given appellant the $400 check, was introduced which recited as follows: "We have completed the acquisition of stock and filed our request for moving the company to Abilene."

Dr. Smith testified that he had received his refund money a few days before the trial but that he had never received the stock. On cross-examination, the witness testified that at the time he was dealing with appellant his reputation (appellant's) for truth and veracity was bad. Dr. Smith further testified that at no time did appellant represent that he was the person holding an option to purchase the shares of stock in said company, and that it was his (Dr. Smith's) understanding that the acquisition of said stock might not materialize and that it was not a certainty that the purchase would be consummated.

Paul D. Conner testified that he was an assistant to the Commissioner of Insurance of the State of Texas; that he had the files of the Western Fire and Indemnity Company at Lubbock (the company shown by the evidence to be the one in which appellant

was selling options to buy stock) ; that he searched the records and found no application for a change of the home office.

Bill Grosvenor and Frank W. Burger also testified, as state's witnesses, about buying options from appellant to purchase stock in an insurance company in Lubbock. Grosvenor further testified that anything that transpired was dependent upon the associates of appellant acquiring the stock in the company; that appellant never at any time represented to him that he (appellant) was going to buy it or could buy it; that it was not a sure thing.

Murrell Tripp testified that he was president of the Western Fire and Indemnity Company located in Lubbock; that he did not know appellant; that he was never contacted concerning the purchase of stock from the company; that he had no conversation with the appellant or anyone concerning moving the offices from Lubbock to Abilene. The witness further testified that he owned 53% of the stock in Western Fire and Indemnity Company at the time of this trial; that he had formerly owned 12% of the stock and that he had purchased control in the "last six months"; that the company was not having any organizational difficulties to his knowledge.

Appellant testified that he was thirty-six years of age; that he was married and had two children; that he moved to Abilene from Wichita Falls in 1955 or 1956; that he was branch manager or special agent for Gulf Insurance Company; that he received his degree in real estate and insurance from the University of Texas; that he was a member of the First Presbyterian Church. He testified, further, that he cashed Dr. Smith's check and gave it to Dykes (shown to be one of appellant's associates) ; that he never got the money back from the associates; that he personally borrowed money and sold his house and paid back all the persons who invested money in the proposition; that he had never been convicted of a felony or charged with a crime; that at the time he talked with Dr. Smith he had no intention of appropriating the money to his own use. On cross-examination he testified that he cashed the check and that he did not use the money himself; that Dykes was killed in an airplane crash.

After previously testifying that the appellant's reputation for truth and veracity was bad, Dr. Smith concluded his testimony on cross-examination as follows:

"Q. Dr. Smith, his reputation at the time you were dealing with him, was it good or bad? A. Bad.

"Q. And you dealt with him just the same? A. Yes.

"Q. So you didn't rely upon any representation that he made, is that correct? A. I knew what I was getting into."

In Hesbrook v. State, 149 Texas Cr. Rep. 310, 194 S.W. 2d 260, it is stated:

"* * * appellant did not perform his contract, and converted the money to his own use and benefit * * *.

"The pretext * * * relied upon was the representation by appellant that he could and would get the [injured party's] son out of the army. Such was the inducing cause for the [injured party] to deliver to appellant the $400."

Quoting Hesbrook, supra, further, this court said:

"Wherein does this record reveal the falsity of that pretext? It must be remembered that *the pretext must be false.* *** Promises and representations to be performed in the future may constitute the pretext but, nevertheless, *they must be proven to be false * * *.*" (Emphasis supplied.)

We do not think that the evidence is sufficient to sustain a finding that accused misrepresented an existing fact, here. If the testimony that "the company was having some organizational difficulties" may be construed as false, the witness Smith nullified its effect when he said: "I knew what I was getting into." One of the constituent elements of theft by false pretext consists in obtaining the property by means of a false pretext. Redding v. State, 159 Texas Cr. Rep. 535, 265 S.W. 2d 811.

We further note that the state's brief refers to certain testimony as having been given by the appellant when it was actually given out of the presence of the jury, in order for the appellant to preserve his bill of exception.

By informal bill, appellant contends that the trial court erred in not allowing him to testify as to the circumstances and transactions with others which caused him to approach the injured party and make the representations to him which he did.

We think this testimony was admissible and that it constitutes an exception to the hearsay rule. The trial judge fell into error in not admitting it. It is stated in Texas Law of Evidence, McCormick and Ray, Second Edition, Vol. 1, Sec. 799, page 595:

"Communications made or received by a person will often be relevant not as evidencing that the facts are as stated in the communication but as *tending to show the knowledge or belief of the person* who communicated the statement or the *one who received it.* Particularly, the *knowledge* or belief of a litigant at a decisive moment *is often a component of his* cause of action or ground of *defense* \* \* \* Such statements are consistently received if they would tend to induce or indicate a belief material to the case. For example, *a party may introduce statements made by him or to him that throw light on what he knew or believed for the purpose of exonerating himself when charged with a crime* \* \* \* ." (Emphasis, supplied.)

Busby v. State, 89 Texas Cr. Rep. 213, 230 S.W. 419, Syl. 1; Rush v. State, 95 Texas Cr. Rep. 464, 255 S.W. 403, Syl 2; Stapleton v. State, 107 Texas Cr. Rep. 596, 298 S.W. 578, Syl. 5; Tipton v. State, 112 Texas Cr. Rep. 28, 13 S.W. 2d 840.

We think that the appellant should have been allowed to testify to the question: "Had you made any trips or any inquiries concerning the validity of the proposition?" The state objected to the question for the reason that "that calls for hearsay, and self-serving declaration." The court sustained the objection. Appellant then later perfected his informal bill, which reflects that he would have testified that, prior to the time he and Dr. Smith entered into the agreement, he (appellant) and Jim Robinson made a trip to Austin and checked the files of the insurance company, Western Fire and Indemnity Insurance Company, as to its stockholders, lists of financial statements, and all the information about it; that he went to Dallas "about the transaction of this stock of the Western Fire & Indemnity Insurance Company to see whether or not it was feasible."

For the reasons stated, the judgment is reversed and the cause is remanded.

MORRISON, Judge, concurring.

While I agree to the reversal of this conviction because of the error of the court in excluding certain testimony which would have supported appellant's defense that he acted in good faith, I cannot bring myself to agree that no false representations were shown. Dr. Smith testified that appellant represented to him that the company in question was having organizational difficulties while the president of the company testified that such was not the case.